UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MAGED ELSHAMY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-02-S-2637-NE |
| | ) | |
| ALABAMA AGRICULTURAL & MECHANICAL UNIVERSITY, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

FILED
SEP 26, 2003

## MEMORANDUM OPINION

Plaintiff, Maged Elshamy, commenced this suit on September 16, 2002, in the Circuit Court of Madison County, Alabama, naming as defendants to his claims Alabama A & M University ("A & M"), plaintiff's employer, John Gibson, the president of A & M, and the individual members of A & M's Board of Trustees.[1] Plaintiff sued all individual defendants in both their individual and their official capacities.[2] Plaintiff's complaint included the following five counts: (1) declaratory and injunctive relief under Alabama law; (2) breach of contract; (3) petition for writ of mandamus or writ of certiorari; (4) deprivation of due process under Alabama law; and (5) deprivation of due process under the United States Constitution.[3] Defendants removed the action to this court on October 25, 2002, asserting that this court has

---

[1] Doc. no. 1 (complaint, appended to notice of removal). The individual members of A & M's Board of Trustees named in plaintiff's complaint were Jessie Cleveland, Marie Blackwell, Jerry Crutcher, O'Neil Culver, Richard Davis, Emma Melton, Robert Holmes, George Ponder, Shefton Riggins, Richard Showers, and Troy Massey. Plaintiff's complaint also originally named fictitious defendants A,B,C,D,E, and F. However, because there is no fictitious party practice in federal court, the fictitious defendants are no longer parties to this action.

[2] *See id.*

[3] *Id.*



original jurisdiction over plaintiff's federal due process claim pursuant to 42 U.S.C. § 1983.[4] Defendants filed a motion to dismiss on November 12, 2002,[5] which was accompanied with evidentiary materials; accordingly, the court converted the motion to dismiss to a motion for summary judgment.[6] Plaintiff responded to the motion on January 2, 2003,[7] and submitted evidence to support his response.[8]

## I. STATEMENT OF FACTS

Plaintiff alleges that he has been employed by A & M since 1996, and that he currently is a Professor of Mathematics.[9] According to plaintiff, he sought a salary increase in the fall of 2000. A "Personnel Action Form" ("PAF") was issued on February 27, 2001, setting plaintiff's salary at $8,656.20 a month, effective from August 15, 2000 to May 15, 2001.[10] A second PAF was issued on May 23, 2001, stating that plaintiff's salary should be $8,656.20

---

[4]*Id.* (notice of removal). The complaint specifically states, "[t]he actions perpetrated upon Elshamy by all Defendants hereto, in their individual and official capacities, were accomplished under color of state law, statute, ordinance, regulations, custom or usage in violation of the United States Constitution as applied to the States by 42 U.S.C. § 1983." *Id.* (complaint) at Count Five. Supplemental jurisdiction also exists over plaintiff's state law claims because they are so related to the federal claim that they "form part of the same case or controversy. . . ." *See* 28 U.S.C. § 1367.

[5]Doc. no. 5.

[6]Doc. no. 7. If matters outside the pleadings are presented to and considered by the court when ruling upon a Rule 12(b)(6) motion to dismiss, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b); *see also, e.g., Arnold v. United States Postal Service*, 649 F. Supp. 676, 678 (D. D.C. 1986). This allows the court's inquiry to be fact specific and allows the nonmovant to demonstrate the existence of any genuine issues of material fact. *But see Denis v. Liberty Mutual Insurance Co.*, 791 F.2d 846, 850 (11th Cir. 1986) (recognizing an exception to the requirement that the court afford plaintiff notice of its intent to convert and an opportunity to supplement the record); *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 605 (11th Cir. 1985) (same).

[7]Doc. no. 10.

[8]Doc. no. 9.

[9]Plaintiff's evidentiary submissions (Elshamy affidavit) at 1.

[10]*Id.* at 1; *see also id.* at Exhibits A and B. Although the Personnel Action Form did not issue until February 27, 2001, the pay increase was retroactive to August 15, 2000.

a month from May 15, 2001 to August 15, 2001.[11] A third PAF, and the final one plaintiff has submitted, was issued on September 24, 2001, again setting plaintiff's salary at $8,656.20 a month, effective from August 15, 2001 to December 31, 2001.[12]

After receiving a salary of $8,656.20 a month through the end of 2001, plaintiff received a series of salary reductions. Plaintiff states that A & M reduced his salary: to $6,492.16 a month in the Spring of 2002; to $5,666.67 a month during the Fall Semester of 2002; and to $5,386.67 a month "[o]n or about November 30, 2002."[13] Plaintiff alleges that he did not receive either notice or a hearing before any of the reductions.[14]

The Alabama A & M Faculty/Administrative Staff Handbook sets forth the University's policy regarding compensation. The Handbook states that

> [i]t is the intent of the University to remunerate its employees as adequately and competitively as is practically feasible within the limitations of State appropriations and other financial resources. A prevailing basic salary scale will be developed and distributed to employees at he [sic] beginning of each academic year along with continuing employment offers. The University policy is to maintain salary schedules for all classifications of positions reflecting essentially equal pay for equal work. Adequate consideration will be given to the duties, responsibilities, requirements, level of required training and the availability of positions in the job market. The University will endeavor to provide competitive compensation with other universities and private and public employers in this locality. Compensation and policies must be reconciled with budgetary constraints, availability of funds, financial status of the University, and budgetary action of the Board of Trustees.[15]

---

[11]*Id.* at Exhibit C.

[12]*Id.* at Exhibit D.

[13]*Id.* at 2. Plaintiff has not produced any Personnel Action Forms or any other documentation showing these salary reductions.

[14]*Id.*

[15]Defendant's evidentiary submissions, Tab A, Exhibit 1, at 71.

The handbook further states that salary increases will occur once a year "[w]henever fiscally possible," and will be based on the employee's "performance evaluation."[16] University policy also provides for increases in salary for employees receiving promotions, but only "[w]henever fiscally possible."[17]

The Faculty/Administrative Staff Handbook also "set[s] forth policies and procedures which govern and dictate the procedures by which employees of Alabama A & M University may file grievances for matters arising out of the terms and conditions of employment."[18] An employee may file a grievance if he feels that his "employment rights and entitlements have been adversely affected due to a violation, misapplication [,] or misinterpretation of policies, regulations or procedures."[19] The grieving employee may request a hearing, and the Grievance Committee[20] decides whether to grant the request.[21] If a hearing is held, the employee has a right to "present the testimony of witnesses and other evidence, to confront and cross-examine adverse witnesses and examine all documents and other adverse demonstrative evidence."[22] The employee may seek the advice of counsel before the hearing, but counsel may not participate in the hearing itself.[23] The findings of the Grievance

---

[16] *Id.*

[17] *Id.* at 72.

[18] Defendant's evidentiary submissions, Exhibit A (Thompson affidavit) at 2.

[19] Defendant's evidentiary submissions, Exhibit 1 at 64.

[20] The Grievance Committee is composed of four elected faculty members from each academic school or college and three professional staff members appointed by each school or college Vice President. Members of the committee serve a one-year term of office, but faculty members on the committee may be elected to three successive terms. *Id.* at 67-68.

[21] *Id.* at 64-65.

[22] *Id.* at 65.

[23] *Id.*

Committee are reviewed by a University Vice-President, and the Vice-President's decision may be appealed to the University President.[24]

Plaintiff states that he filed a grievance with the Grievance Committee "on or about March 4, 2002," and that he received a hearing on April 11, 2002.[25] However, plaintiff alleges the hearing was not conducted in accordance with the proper procedures. Specifically, plaintiff alleges that the panel conducting the hearing was not "properly compiled," because the members of the panel had not been properly elected on a yearly basis as the policy manual dictates.[26] Further, plaintiff states that the Grievance Committee's decision was not submitted to a University Vice-President for review, as required by University policy, and that no final decision has been made concerning his grievance.[27] Because of the delay in receiving a final decision on his grievance, plaintiff asserts his "utilization of the University's grievance process was futile."[28]

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 permits any party to a civil action to move for summary judgment upon a claim, cross-claim, or counterclaim on which there is no genuine issue of material fact, and upon which the moving party is entitled to prevail as a matter of law.

---

[24]*Id.* at 66-67.

[25]Plaintiff's evidentiary submissions (Elshamy affidavit) at 2.

[26]*Id.; see also* defendant's evidentiary submissions, Exhibit 1 at 67-68.

[27]Plaintiff's evidentiary submissions (Elshamy affidavit) at 2; *see also* defendant's evidentiary submissions, Exhibit 1 at 66-67.

[28]Plaintiff's evidentiary submissions (Elshamy affidavit) at 2.

> The judgment sought *shall be rendered forthwith if* the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c) (emphasis supplied). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The motion pierces the pleadings, and "strikes at the heart of the claim. In effect it argues that as a matter of law upon admitted or established facts the moving party is entitled to prevail." Charles Alan Wright, *The Law of Federal Courts* § 99, at 705 (5th ed. 1994).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact to be decided at trial. *See, e.g., Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The movant discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the opposing party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553.

When the moving party has discharged its burden, the opposing party must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See*

*Jeffery*, 64 F.3d at 593. The non-moving party must come forward with more than a "mere 'scintilla'" of evidence; instead, "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

When deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-moving party, and, to resolve all reasonable doubts in that party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc). Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983). Moreover, inferences that are "merely colorable,"[29] conclusory,[30] conjectural, or "not significantly probative"[31] do not create a genuine issue of material fact. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). In short, to avoid summary judgment, the opposing party must come forward with specific facts that are "material and of a substantial nature, not

---

[29]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988).

[30]*See Johnson v. Fleet Finance, Inc.*, 4 F.3d 946, 949 (11th Cir. 1993); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989).

[31]*Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2510-11.

fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicious." *American Lease Plans, Inc. v. Silver Sand Co. of Leesburg, Inc.*, 637 F.2d 311, 315 (5th Cir. 1981).[32]

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510).

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Hayes v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also Four Parcels of Real Property*, 941 F.2d at 1437. The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S. Ct. at 2512.

### III. DISCUSSION

**A.     Plaintiff's Federal Procedural Due Process Claim**

Plaintiff's federal due process claim alleges that defendants' failure to "provide [him] with notice or a hearing concerning reduction of his salary . . . deprived him of a

---

[32]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

constitutionally-protected property interest by state action . . . ."[33] Although plaintiff does not specify whether his claim is one for substantive or procedural due process, plaintiff's references to "notice" and a "hearing" make it clear that plaintiff's due process claim is procedural in nature. *See McKinney v. Pate,* 20 F.3d 1550, 1559 (11th Cir. 1994) ("Whether an individual complains that a state lacks constitutionally adequate procedures for termination of employees or asserts that his particular hearing was not fair and impartial, he has raised only procedural due process concerns."). Indeed, plaintiff's argument in his reply brief is phrased in terms that are synonymous with a procedural due process claim.[34]

The Eleventh Circuit has held that "[t]he success of due process arguments depends upon the finding of a constitutionally protected property interest in the expectation of continued employment or of a liberty interest having been infringed upon by the State; absent such interest, no due process protections attach." *Gray v. Board of Regents of the University System of Georgia,* 150 F.3d 1347, 1350 (11th Cir. 1998) (citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569-70, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972)); *see also Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1486 (11th Cir. 1992) ("When reviewing a due-process claim, the threshold question is whether plaintiffs were deprived of a protected property or liberty interest."). This court is of the opinion that plaintiff does not possess a constitutionally-protected property interest in not having his salary reduced.

It is well-settled that "[t]o have a property interest in a benefit, a person clearly must

---

[33]Doc. no. 1 (complaint, appended to notice of removal) at Count Five.

[34]*See* doc. no. 10 ("Plaintiff's Brief in Opposition to Motion to Dismiss").

have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577, 92 S. Ct. at 2709. Further, the Supreme Court has stated that "[p]roperty interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

The Supreme Court has frequently recognized an employee's property right in the job itself, sufficient to protect against *termination* without due process of law being afforded. *See, e.g., Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (state civil service law provided plaintiff with a property interest in his employment which prevented him from being *terminated* without due process of law); *Perry v. Sinderman,* 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972) (plaintiff had property right sufficient to protect him from being *terminated* without due process of law on the basis of an unwritten understanding with his employer that was the equivalent of tenure); *Roth,* 408 U.S. 564, 92 S. Ct. 2701 (plaintiff did not have a property interest in his employment; thus, he could constitutionally be *terminated* without due process being provided).

The Eleventh Circuit also has recognized a constitutionally-protected property right in employment sufficient to prevent adverse decisions not rising to the level of termination, but only when the right was clearly set forth in an administrative rule or in applicable case law, or when the right was in property that constituted a precondition to employment.

*Compare El Shahawy v. Harrison*, 875 F.2d 1529, 1532 (11th Cir. 1989) (physician had a constitutionally-protected property interest in medical staff privileges when the hospital's bylaws provided for such privileges and when circuit precedent had clearly and consistently recognized the property interest in factually similar circumstances); *Pastrana v. United States*, 746 F.2d 1447, 1450 (11th Cir. 1984) (pilot had a constitutionally-protected property interest in his pilot certificate because it was "a predicate to his employment as a pilot") *with Oladeinde*, 963 F.2d at 1486 ("'The internal transfer of an employee, unless it constitutes such a change of status as to be regarded essentially as a loss of employment, does not provide the additional loss of a tangible interest' that deserves Fourteenth Amendment protection.") (quoting *Fauchner v. Rodziewicz*, 891 F.2d 864, 869 (11th Cir. 1990)).

In the absence of any "statute, rule, or understanding upon which [a] plaintiff could rely for a legitimate claim of entitlement to a pay raise," the Eleventh Circuit has refused to recognize a "constitutionally protected property interest to serve as the basis of a due process claim." *Estes v. Tuscaloosa County*, 696 F.2d 898, 901 (11th Cir. 1983) (citing *Roth*, 408 U.S. 564, 92 S. Ct. 2701). Similarly, the Eleventh Circuit has held that a government employee presented no constitutionally-protected property interest "in the mere recommendation for a raise" when the employer refused to approve the raise due to the employee's unsatisfactory job performance. *Doyle v. University of Alabama in Birmingham*, 680 F.2d 1323, 1326 (11th Cir. 1982). Further, other district courts within the Eleventh Circuit have held that government employees do not generally have a constitutionally-protected property interest in receiving salary increases. *See Cook v. Ashmore*, 579 F. Supp.

78, 84 (N.D. Ga. 1984) (plaintiff was not constitutionally entitled to a salary increase, even though he had received similar increases in the past, because he could point to "no statute, rule, regulation, policy, or contractual term that reasonably could be read as providing him with an entitlement to these benefits"); *Ballard v. Blount,* 581 F. Supp. 160, 165 (N.D. Ga. 1983) (plaintiff had no constitutionally protected property right in receiving a merit salary increase when the merit increases were "designed to serve as a reward for an acceptable teaching performance").

In this case, plaintiff presents no "legitimate claim of entitlement" sufficient to create a constitutionally protected interest in not having his salary reduced. *See Roth,* 408 U.S. at 577, 92 S. Ct. at 2709. The A & M Faculty/Administrative Staff Handbook makes it clear that, although A & M generally strives to provide its employees with reasonable, competitive compensation, any compensation that it may issue always is subject to fiscal and budgetary constraints. The Handbook also makes it clear that an employee's compensation level depends on factors such as the employee's "duties, responsibilities, requirements, level of required training and the availability of positions in the job market." Additionally, merit increases are discretionary, depending on the employee's performance. These University policies may have been sufficient to give plaintiff an *expectation* of continuing to receive his existing salary, or possibly even an increase in his compensation, but they provide no guarantees. Plaintiff's ability to receive a particular salary is clearly subject to A & M's discretion, and to conditions beyond his or the University's control.

Plaintiff cannot rely on his pay history to create a constitutionally-protected entitlement

to receive a particular salary in the future. *See Cook,* 579 F. Supp. at 84. Plaintiff also cannot rely on any statement of his salary in a PAF, because the last PAF plaintiff submitted only set his salary at $8,656.20 a month *through December 31, 2001.*[35] Plaintiff's salary was not reduced until Spring of 2002, after the last PAF was no longer effective.[36] Rater than providing any documentation of his right to continued receipt of a particular rate of pay, all plaintiff has to offer is his conclusory, self-serving allegation that defendants "deprived him of a constitutionally-protected property interest by state action."[37]

Stated differently, plaintiff has not come forward with specific facts showing that he has a constitutional entitlement to continued receipt of any certain salary. Therefore, even viewed in the light most favorable to plaintiff, as they must be in this summary judgment stage, plaintiff's conclusory allegations do not carry his burden in opposing the defendants' motion for summary judgment. Because plaintiff has not demonstrated any constitutionally protected property interest in not having his salary reduced, defendants cannot be held liable for any federal due process violation.[38] *See Gray,* 150 F.3d at 1350; *Oladeinde,* 963 F.2d at 1486.

### B.    Plaintiff's State Law Claims

All of plaintiff's remaining claims are Alabama state law claims.[39] This court's

---

[35]Plaintiff's evidentiary submissions (Elshamy affidavit) at Exhibit D.

[36]*See id.*

[37]Doc. no. 1 (complaint, appended to notice of removal) at ¶ 25.

[38]Because defendants cannot be held liable for any federal due process violation, the issues of immunity raised in defendants' summary judgment brief need not be considered. *See* doc. no. 4 (memorandum of law in support of motion to dismiss) at 12-23.

[39]Plaintiff's claims for declaratory and injunctive relief (*see* doc. no. 1 (complaint, appended to notice

jurisdiction over these pendent state law claims is governed by 28 U.S.C. § 1367(a), which provides that:

> in any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Even so, "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). This court exercises its discretion and declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. Accordingly, the remaining state law claims are due to be remanded to the Circuit Court of Madison County, Alabama, from which the case was removed.

An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this **26th** day of September, 2003.

_____
United States District Judge

---

of removal) at Count One), and his claim for writ of mandamus, or writ of certiorari (*see id.* at Count Three), have a federal component, insofar as they seek to redress violations of federal law. However, because this court finds that defendants have not violated any federal law, no injunctive, declaratory, mandamus, or certiorari relief can be awarded on plaintiff's federal due process claims. The claims for injunctive, declaratory, mandamus, and certiorari relief may remain, but only to the extent they seek to remedy violations of state law.